238081. This is a bail application. Mr. Egan. May it please the court, James Egan for Patrick Dai. The Supreme Court said in Salerno that in our society liberty is the norm and detention prior to trial the carefully limited exception. The government asked this court to stretch the carefully limited exceptions Congress placed within the Bail Reform Act in two ways. First, as the Supreme Court recognized in Salerno, the Bail Reform Act carefully limits the circumstances under which detention may be sought to the most extremely serious crimes. The government's interpretation would violate that restriction by allowing relatively minor offenses involving no force to pass through the gatekeeping function of F1A. Second, my argument is that by including, by limiting the types of offenses that are detainable offenses in F1A to 10 years or more, Congress is signaling that only serious offenses will trigger, will pass through the gatekeeping function. We're not looking necessarily at this offense because over the years Congress has redefined crime of violence in 3156 to include offenses that carry no more than one year or two year maximums. In the case of 2257, which was a two year maximum for failing to properly keep records of adult pornography, a one year max for failure to report child abuse. Later in 1998, Congress added Chapter 117 to the definition of crime of violence, which would at that point included 2425, which is the use of interstate facilities to transmit information about a minor, which carried only a five year maximum. Would you address the government's argument based on Section 1591 in reference to that? Yeah. Because that seems to me to be the most problematic for your position. Okay, sure. So a few things on that. The 10 years or more limitation applies to 1591. 1591 has, by my count, at least three offenses. Every one of which has a statutory maximum of 10 years or more. Correct. So all three of them pass through that gatekeeping function. That's total, I mean, that's total surplusage. Otherwise, if you want us to say that this 10 years that the last clause applies across the board, it does not make sense with respect to 1591. Well, again, 1591 was added four years after the 10 years or more language. And secondly, Congress is free to amend 1591 either by So, can I ask about the drafting history too? Was it 2004 when the 2332B language was added? That would have then, under your reading, also applied to the crime of violence piece, which was already there, and it would have limited that to what was greater than 10 years, right? Correct. But at the same time expanded by adding everything included in 2332B, right? That's your reading. It's just odd. I guess the point is that that seems odd that you're at the same time expanding and limiting what you're trying to encompass. You're expanding offenses in 2332B, G5B. Expanding offenses but then limiting at the same time. That are more than 10 years. Yeah. But, sure. But again, by that point, the term of crime of violence had already swelled to include minor offenses. So, that would be the reason Congress would use the 10 years or more at that point to include it in the F1A and limit the number of crimes that previously had, or up to 2004, had now counted as crime of violence, but yet were minor and involved no force. Again, Congress could have... And then when 1591 is added, five years after that, then it's just surplusage. Who cares? Is that sort of the drafting history thought process? No, I think that the thought process is to include all of 1591 at that point. It was just easier probably to put it in there because some of those offenses, I gather, were not, at that point, were not yet crime of violence under the definition because Chapter 77 was added in 2015 and 1591 is part of Chapter 77. So, Congress at that point is just isolating 1591 offenses within the broader Chapter 77 offenses to count as detainable offenses in F1A. May I ask you a housekeeping matter? Sure. So, each side, this relates to the decreto result. You denominate this as an appeal from an order of detention pending trial. The government describes it as a motion for release pending trial. And, of course, the way that it first came to us, if I remember correctly, was as a motion to vacate. What is this? What do I have? What do we have? So, I, to be honest, this is the first case I've handled in this posture, an appeal involving a detention case. I looked for guidance in past cases and I saw some were presented as the normal briefing, blue book, blue cover, red cover reply, and some were termed motions. When I filed, it was defaulted and I was told to file it as a motion for bail. I gather that's because this court can, on its own, release Mr. Dye. But I think how we're posturing it is it's more of a review of the district court's decision, which is itself a review of the magistrate's decision, right? And that's how this normally arise. So, you're saying this is an appeal? This is an appeal, correct. Not a motion, which is why it appears on the appeal argument calendar. Yes, I think that's fair, Your Honor. I, if you can help me, I don't, I look, you know, rule nine for guidance to the FRAP rule nine. It's, it could use, I mean, it's your, well, I don't, I don't, well, does it matter? I mean, if it's a, if it's a motion or an appeal. We'll accept your representation that this is an appeal, not a motion. Okay. Thank you very much. We'll hear from you. Okay. Good afternoon, Your Honors. May it please the court, Michael Gadarian on behalf of the United States. The government's position is that the plain language of the statute and the applicable interpretive canons combined to give this court ample basis to affirm the district court. I did want to respond to an argument that struck me as new or somewhat new from the reply about the structure of the definitional section applicable to the bill. Bail Reform Act. As I understand the defense argument, it's essentially that the term crime of violence is defined in 3156 and applicable to 3141 through 3150 has expanded over time to include additional offenses by specific reference to their applicable chapters. In the government's view, the court doesn't necessarily need to reach that far for interpretive guidance to determine that the district court was correct here. But if it does, the government's position would be that the defense has it backward. The definitional section in 3156 is where one might expect a limitation to the crime of violence category to appear, not as a separate part of a edit to the Bail Reform Act to increase the situations where the government is permitted to ask for detention. And then as the corollary point, your honors, is that the government is permitted to ask for detention in crime of violence cases. Presumably, if one of those offenses is comparatively less serious, the defense will be free to argue that as far as conditions are concerned, potentially to set conditions in those circumstances should the government ask for detention on an otherwise less serious, but nevertheless, crime of violence. If the court has questions, I will try to answer them. If not, I will cede the remainder of my time and ask the court affirm the district court's decision in this case. Thank you very much. He has a minute of rebuttal. Oh, you? Mr. Egan. All right. Well, you want to rebut? I guess the thing I would rebut to is only the claim that the 10 years or more would be expected to be found in the 3156 definition of crime of violence. Congress chose to put in a 3142 F1A to limit the entire list. That's why it's there. If the 10 years or more applied only to 2332B offenses, Congress could have put it in a different subsection. It did that in 3C. Maybe I was a little too hasty. The government also says that there is a separate reason for detention, namely risk of fraud, which the district court did not address specifically, I think. Just categorically, generally, why isn't that a reason that we might consider? Sure, you can consider it, but the reason it doesn't apply is because Mr. Dai's connections to China, which are one piece, are only through his parents. They're attenuated at best, and there's no evidence that his parents are at risk of flight or that they would use their resources to try to hide him by shipping him to China. Secondly, the government claims that suicide presents a serious risk that he will flee. Yet even the government can't claim that any suicidal comments that Mr. Dai made had anything to do with evading criminal prosecution here. Certainly, the effect of suicide, even if it were an intentional act meant to evade prosecution, which of course there's no evidence that it is, there's no evidence that it would be done to leave the jurisdiction. The government claims that it would be a metaphysical flight, but even there, there's no evidence. So that would be why F2A does not apply. Thank you very much.